## Case No. 8,787.

### In re MACFARLAN.

[Betts, Scr. Bk. 95.]

District Court, S. D. New York. 1842.

BANKRUPTCY—DISCHARGE—PRIOR FRAUD.

[Fraud consummated under an assignment for benefit of creditors before, and not in contemplation of, the passage of the act, does not bar a discharge.]

[In the matter of William Macfarlan, a bankrupt. Heard on bankrupt's application for a discharge and exceptions thereto.]

BETTS, District Judge. The two material objections to the bankrupt's discharge are that he has concealed property, and has admitted false and fictitious debts against his estate. The bankrupt presents his application in a novel, not to say an awkward, manner, by giving an exhibit of his individual affairs as they were in 1837, and with but a faint and scanty statement of their actual condition at the present time. That is left very much to implication. It is this method of scheduling his assets and liabilities that involves him in the present contest. He appears to have incurred debts in three different situations: First, as a wine merchant, up to February 25th, 1837, when he assigned his property to Hugh Macfarlan, accompanied by a schedule of his debts, in payment of which his assets were to be applied; secondly, as a member of the firm of Macfarlan & Kennedy, of Baltimore, in 1839 and beginning of 1840; and, thirdly, in his individual capacity, when out of employment, from 1840 to the present time. He refers to and sets forth his debts as they existed at the time of his first assignment, in 1837, and his partnership debts as he left them in Baltimore in 1839, alleging that in both instances property or means were assigned to be applied towards the satisfaction of such debts. This representation of his affairs cannot be construed an averment that those debts are now subsisting and outstanding in the same situation as when he made the assignment, and accordingly the proofs that some of these debts have been since fully paid with his knowledge does not contradict his petition. The creditors should have exacted a more specific statement of his condition at the time his petition was filed, and if he had averred all those debts to be then outstanding the testimony would have met and falsified the assertion. Upon the actual form of the petition the issue taken by the creditors and the proofs supporting it would appear immaterial and irrelevant. The bankrupt's petition seems to have been understood as reiterating the representation of his affairs in 1837 as their true state and condition in 1842, but such is not the language of the petition and schedule, and the party would seem accordingly to have been led off to form a false issue. Supposing a debt wholly fictitious in its origin had been paid in full in 1837 by the assignee under the collusive and fraudulent procurement of the bankrupt, such admission of a false debt would not affect his proceedings under the act. It has relation to matters concocted or completed before the statute came into existence. To bar a discharge under the act, the debt must be set up as one not available against any estate the bankrupt may possess. Similar observations apply to the concealment of property. The concealment, if any, is in the transactions of 1837 or 1838, when it is supposed certain property nominally assigned for the benefit of creditors was applied to the use of the bankrupt, or is now held by the assignee to be hereafter transferred to the bankrupt. There is no proof to support this latter suggestion. Clearly, a fraudulent diversion of property anterior to the passage of the act [of August 19, 1841; 5 Stat. 440, c. 9], and without reference to the probability of such a law, cannot affect a bankrupt if he no longer possesses it, and his proceedings have been fair under the statute. The creditors may have been delayed or defrauded by the manner in which the trust was executed by the assignee in 1837, or he may yet have property which ought to go to their benefit; yet these facts supply no ground of opposition to the application of the bankrupt. In order to bar his discharge, it must appear that there is now existing some property or interest belonging to him which he has withheld from his inventory, or that he has now brought forward and sanctioned as a debt, yet in life some fictitious or false claim. I think the testimony falls short of establishing these facts, but that there were circumstances sufficiently doubtful and suspicious to justify the creditors taking this opposition, and that they ought therefore to be exempted from costs. The objections are accordingly overruled without costs.